IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JERRY COOK**                                                                                     **PLAINTIFF**

V.                         **CASE NO. 5:18-CV-5124**

**GEORGE'S, INC.**                                                                  **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are a Motion for Summary Judgment (Doc. 41), Brief in Support (Doc. 42), and Statement of Facts (Doc. 43) filed by George's, Inc. ("George's"). Plaintiff Jerry Cook filed a Response in Opposition (Doc. 51), Statement of Facts (Doc. 52), and supporting Brief (Doc. 53), and George's filed a Reply (Doc. 56). The Motion is ripe for ruling.

Shortly after Mr. Cook filed his opposition to the Motion for Summary Judgment, George's filed a Motion to Strike his entire summary judgment response, arguing that the six exhibits he filed in support of the response were not produced in discovery. George's also claims that the declarations referenced unverified and irrelevant information and contained inadmissible hearsay. *See* Doc. 54. In George's view, Mr. Cook's entire summary judgment response should be stricken since it relies on these exhibits. Mr. Cook states in opposition to the Motion to Strike that his exhibits were disclosed to George's early in this litigation and are both relevant and admissible at summary judgment. *See* Doc. 57-1. For the reasons explained below, the Court **STRIKES** one of the six exhibits at issue but otherwise **DENIES** the Motion to Strike. Further, the Court **DENIES** the Motion for Summary Judgment.

## I. BACKGROUND

Mr. Cook first worked for George's for one week in 2012. To qualify for that job, he passed a physical examination and a drug screen. He either quit after giving his supervisor notice or was terminated for being a "no-call/no-show." *See* Doc. 44-1 (document indicating that Mr. Cook's employment ended in 2012 because he "had to go to Western Oklahoma/Family" but also noting on the same form the abbreviation "3NCNS," which George's asserts stands for "three no-call/no-shows"). Mr. Cook maintains that he was not fired in 2012 but instead "quit after two days" because he "had to go back to Oklahoma" and was never a "no-call-no-show." (Doc. 51-1, p. 1).

In 2015, Mr. Cook again applied to George's for employment and did so on three separate occasions: February 1, June 19, and October 12. The parties agree that Mr. Cook's February 1 and June 19 job applications were rejected by George's upon initial review, and he was not offered an interview for either position. They do not agree about why he was not interviewed. Mr. Cook contends that he was applying for low-skill jobs for which he was qualified, but he was not offered interviews because George's perceived that he was disabled and had placed a "333" notation in his personnel file to reflect that knowledge. *See, e.g.*, Doc. 44-1, p. 16. Mr. Cook presents three sworn declarations by former human resources employees and directors who worked for George's in 2015. Their declarations explain that the "333" notation is code for "do not rehire for medical reasons." (Doc. 52, p. 4).

Mandy James, a former human resources manager who worked for George's during the relevant time period, stated in her declaration that she believes George's discriminates against qualified job applicants who either have disabilities or are perceived

2

to have disabilities by placing a "333" code on the applicants' employment forms and then refusing to hire them.  *See* Doc. 51-6.  Maria "Jessica" Velez also submitted a sworn declaration stating that when she was employed by George's as a human resources specialist, she "came across a 333 code for an applicant, Jerry Cook," and her supervisor, Ms. James, "informed [her] that the management told her that the 333 code meant that the individual had a disability or work restrictions—no hire/re-hire."  (Doc. 51-4).  Ms. Velez's job included "screening and processing applicants for employment," and she claims "[t]he practice was to always interview the [333] individual but not hire them."  *Id.*  A third former George's human resources specialist named Heather Huff (formerly Heather Teague) echoed these claims in her sworn declaration.  (Doc. 51-5).  Ms. Huff explained that she "did not know what [333] meant initially" but that "Glen Balch, VP of HR, stated the '333' code meant 'medical—not eligible for rehire'" and "instructed [her] not to print a screenshot."  *Id.*  According to Ms. Huff, this understanding of what the "333" code meant "was confirmed by one HR Coordinator and two HR Supervisors" and "is likewise known by others in the Human Resource Department and upper management officials."  *Id.*

George's current Human Resources Director, Gus Plumb, confirmed in his affidavit that George's has, in the past, "utilized the code '333' in its electronic human resource system," but not to identify employees who are disabled or suffer from medical conditions.  Instead, Mr. Plumb claims that "333" is "shorthand for a variety of George's personnel matters, including: three no-call/no-shows; three prior employment periods with George's; prior failed drug test[s] . . .; and prior bad actions while working at George's sufficient to warrant the individual to not be rehired, such as fighting at work."  (Doc. 44-2, p. 3).

3

According to Mr. Plumb, the "333" code appeared in Mr. Cook's personnel file because he "was a no-call/no-show for three consecutive shifts during his first week of employment" in 2012, *id.*, a fact Mr. Cook disputes.

The parties do not agree about whether Mr. Cook was actually disabled under the Americans with Disabilities Act ("ADA") when he worked for George's in 2012 or when he applied for jobs at George's in 2015. He explains in his sworn declaration that his "legs were hurt in [an] accident back in 1998," and after that, he "had pain in [his] legs and back." (Doc. 51-1, p. 1). When he was applying for jobs in 2015, he "would have tingling like when your legs are asleep a lot. It could go on for days and go away." *Id.* The pain in his legs limited the amount of time he could stand up while on the job, but he claims he was still capable of working. *Id.* He also contends that the 1998 accident caused him to suffer cognitive deficiencies, specifically in the areas of "thinking and concentrating." *Id.* Finally, he claims he has "a hard time talking" since his accident. *Id.* at p. 2. He has "a speech problem" where he "start[s] talking too fast and [his] words run together and people can't understand [him]." *Id.*

After Mr. Cook did not hear back from George's for the two positions he applied for in early 2015, he applied for another job with the company in October of that same year and this time was granted an interview. It is undisputed that he failed to appear for this interview, but he claims that he visited George's Employment Center the next day to reschedule it. Ms. James states in her declaration that the only reason Mr. Cook was granted an interview in the first place was because she complained to her supervisor about the discriminatory "333" coding practice, which she had flagged on Mr. Cook's and other applicants' personnel files. She expressed to her supervisor that this employment

4

practice was illegal and asked her supervisor for permission to interview Mr. Cook. *See* Doc. 51-6, p. 1. After he failed to show for the first interview, she was not permitted to offer him a second interview, though "other applicants were allowed to interview after a no-show frequently." *Id.* at p. 2.

On behalf of George's, Mr. Plumb confirms that "[i]f an applicant fails to show up for a scheduled job interview, then a second job interview may be scheduled. However, if the applicant fails to appear for two scheduled job interviews, then the applicant is no longer considered for the position." *Id.* at p. 2. According to Mr. Plumb, Mr. Cook missed not one, but two scheduled interviews in October 2015 and was not hired for that reason alone. There is at least one document in the personnel file that seems to support this claim. *See* Doc. 41-1, p. 20 (handwritten note on an "Applicant Disposition Form" dated October 12, 2015, that states, "NCNS for Orientation 2x *erika," with the word "Orientation" lined through and replaced with the word "Interview"). Ms. James also takes issue with the suggestion that Mr. Cook missed two interviews and describes this claim as "false." (Doc. 51-6, p. 1). She asserts that she was "running the hiring center" during October of 2015 "and knew who was doing what, and . . . was paying particular attention to Mr. Cook's situation." *Id.* Mr. Cook, of course, also disputes that he was offered a second interview. He claims that he was qualified for all the jobs he applied for in 2015 and was only denied employment due to discrimination based on a real or perceived disability.

## II. LEGAL STANDARD

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

### B. Disability Discrimination

Mr. Cook's Amended Complaint includes a single count of employment discrimination based on disability pursuant to the ADA and the Arkansas Civil Rights Act ("ACRA"). Under the ADA, it is unlawful for a covered employer to discriminate against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). This Court must "analyze a disability claim under the ACRA using the same principles employed in analyzing claims under the [ADA] . . . ." *Duty v. Norton-Alcoe Proppants*, 293 F.3d 481, 490 (8th Cir. 2002) (citations omitted); *Scruggs v. Pulaski Cnty.*, 817 F.3d 1087, 1094 n.4 (8th Cir. 2016) (same) (citations omitted). Accordingly, the following legal standards apply to Mr. Cook's claims under both the ADA and the ACRA.

To determine whether Mr. Cook's disability discrimination claim survives summary judgment, the Court must assess whether the record evidence, taken in the light most

6

favorable to him, establishes a *prima facie* case of disability discrimination. He can establish a *prima facie* case by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the familiar three-step analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Once he makes out a *prima facie* case, the burden shifts to George's to articulate a legitimate, non-discriminatory reason for its adverse employment decision. After that, the burden shifts back to Mr. Cook to "produce evidence sufficient to create a genuine issue of material fact regarding whether [George's] proffered nondiscriminatory justifications are a mere pretext for intentional discrimination." *Torgerson v. City of Rochester*, 643 F.3d 1030, 1046 (8th Cir. 2011) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

"Within the meaning of the ADA, the term 'disability' includes, among other things, 'being regarded as having,' 42 U.S.C. § 12102(2)(C) (1994), 'a physical or mental impairment that substantially limits one or more of the major life activities' of the individual, 42 U.S.C. § 12102(2)(A)." *Conant v. City of Hibbing*, 271 F.3d 782, 784 (8th Cir. 2001). "Thus, individuals who are 'regarded as' having a disability, but who are not actually disabled, can still fall within the protection of the ADA." *Id.*

### III.  DISCUSSION

#### A.  Motion to Strike

George's Motion to Strike (Doc. 54) argues that the six supporting exhibits Mr. Cook filed with his opposition to the Motion for Summary Judgment are inadmissible and should not be considered by the Court. The first exhibit is the handwritten declaration of Mr. Cook, which was signed under penalty of perjury. (Doc. 51-1). George's complains

that the declaration "contains no relevant testimony to the pertinent issues of the case." (Doc. 55, p. 5). The Court disagrees and declines to strike the declaration for that reason. Next, George's complains that the declaration is "called into question due to the unverified redaction on page 1, lines 10–11." *Id.* at p. 6. To the extent this redaction was a problem, Mr. Cook cured it by submitting another affidavit confirming that he approved of all redactions. *See* Doc. 57.

The second exhibit at issue is a hearing transcript. (Doc. 51-2). The Court declines to rule on its admissibility and has not relied on it in deciding the summary judgment motion.

The third exhibit is a screenshot of an email from Ms. Huff (formerly Teague) to Ms. Adams. (Doc. 51-3). A narrative description of the email appears both above and below the screenshot on the same page. This document is not signed, and there is no indication as to who wrote the narrative or produced the screenshot. The Court finds this exhibit inadmissible on summary judgment due to a lack of foundation and authenticity. *See* Fed. R. Evid. 901. The exhibit is therefore **STRICKEN** from the summary judgment record, and the Court will not rely on it.

The fourth, fifth, and sixth exhibits are signed and sworn declarations by former George's human resources employees Velez, Huff, and James. (Docs. 51-4, 51-5, 51-6). George's claims that these declarations should be stricken because they were not produced during the litigation. Mr. Cook responds that they were part of the EEOC's administrative file that he identified in initial disclosures and that all parties received and relied on from the beginning of the lawsuit. The Court takes Mr. Cook at his word, particularly given the fact that George's did not seek to file a reply to correct the record.

8

Next, George's complains—without proof—that the declarations are not based on the declarants' knowledge. The declarations at issue purport to state the declarants' personal knowledge and were signed under penalty of perjury. In the absence of any contrary, reliable proof from George's, the Court will not make a finding of perjury or strike the declarations. Lastly, George's argues that the declarations contain inadmissible hearsay, which should be stricken. For example, Ms. Velez claims that her supervisor, Ms. James, "informed [her]" what the "333" code meant and further claims that the use of this code was "known by others in the Human Resource Department and upper management officials" (Doc. 51-4); Ms. Huff describes certain statements made to her by Glen Balch, the Vice President for Human Resources, about the meaning of the "333" code and further claims that her understanding of the code's meaning "was confirmed by one HR Coordinator and two HR Supervisors" (Doc. 51-5); and Ms. James describes (1) certain conversations she had with Ms. Huff about the "333" code appearing in employees' personnel records, (2) a conference call with George's managers about the "333" code violating the ADA, and (3) Mr. Balch's comments to her about how to treat "333" job applicants, including Mr. Cook (Doc. 51-6). These hearsay claims require further analysis.

> According to the Eighth Circuit,
>
> Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if, when offered against a party, the statement was made by the party's agent during the existence of the agency relationship and concerned a matter within the scope of the agency. Thus, to gain admission of a statement, the proffering party must show that the statement was within the declarant's scope of employment.

*Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 636 (8th Cir. 2007). With respect to the declarations at issue here, all three declarants were human resources

9

employees/managers working for George's during the time period relevant to this case. Their asserted hearsay statements concerned matters within the scope of their agency relationship with George's. In making these statements, they were essentially blowing the whistle on their former employer's allegedly illegal hiring practices. The Court therefore declines to strike these statements as hearsay as they are party admissions under Rule 801(d)(2)(D).

For all these reasons, the Motion to Strike is **GRANTED IN PART** as to Doc. 51-3, which is **STRICKEN** from the record, and **DENIED IN PART** as to all other documents and exhibits referenced in the Motion.

### B.  Motion for Summary Judgment

After careful consideration of the record, the Court finds that Mr. Cook has made a *prima facie* showing that he was at least perceived by George's as having a disability. There is direct evidence in the record that George's discriminated against Mr. Cook on the basis of a perceived disability and that discrimination resulted in a failure to interview and/or hire him for a position or positions for which he was qualified. Although George's has responded to Mr. Cook's claims by asserting legitimate, non-discriminatory reasons for not hiring him—namely, his poor attendance record when he was employed in 2012 and missing two interviews in 2015—genuine disputes remain as to whether those non-discriminatory reasons are pretextual. There are genuine, material disputes of fact as to whether: (1) Mr. Cook actually missed two interviews in 2015 instead of just one; (2) non-disabled, otherwise qualified job applicants were offered the opportunity to interview more than once; (3) Mr. Cook failed to secure a job at George's based on a real or perceived disability; and (4) George's identified former employees with perceived disabilities, such

as Mr. Cook, by placing the code "333" in their personnel files to prevent them from being hired in the future for jobs for which they were qualified.

For all these reasons, the Motion for Summary Judgment is **DENIED**.

### IV. CONCLUSION

**IT IS ORDERED** that Defendant George's, Inc.'s Motion to Strike (Doc. 54) is **GRANTED IN PART AND DENIED IN PART**, in that the exhibit at Doc. 51-3 is **STRICKEN** from the record for the reasons stated, but all other requests to strike are denied.

**IT IS FURTHER ORDERED** that George's Motion for Summary Judgment (Doc. 41) is **DENIED**.

**IT IS SO ORDERED** on this 26th day of April, 2021.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE